### Hunter v. Wood.

(Decided December 17, 1920.)

## Appeal from Muhlenberg Circuit Court.

1. Appeal and Error—Breach of Contract to Sell Lumber—Evidence.
—Evidence examined in suit by purchaser against seller for
breach of contract to sell lumber and held that plaintiff made out
his case and the court erred in directing a verdict for defendant.

2. Damages—Anticipated Profits—Special Damages.—Anticipated
profits are recoverable as special damages for breach of contract
for sale of lumber where it is pleaded and proven that same were
in contemplation of the parties when the contract was executed.

HUBERT MERIDITH and WALKER WILKINS for appellant.

TAYLOR, EAVES & SPARKS for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

In July, 1917, the defendant, now appellee, S. A.
Wood, by written contract sold and agreed to deliver to

plaintiff, R. W. Hunter, at specified prices all of the lumber that could be sawed by Vaughn and McIntyre before July 1, 1918, from one hundred acres of described land owned by Wood. Hunter was to specify how he wanted the timber sawed and furnish a man at the mill to inspect same, and he was to take up and pay for the quantity delivered every two weeks. Wood had previously contracted with Vaughn and McIntyre, who owned a portable saw mill, to work up the timber on this tract of land for him.

Hunter furnished a man at the mill as agreed, for seven consecutive weeks after the contract became effective, to inspect the lumber as sawed and Vaughn and McIntyre were ready, willing and able to saw same but Wood refused to cut the trees and deliver same at the mill as he had agreed to do. For some weeks, Wood put the parties off with excuses and promises to perform his part of the two contracts but finally refused outright to do so. Thereafter Hunter filed this action to recover damages for the breach of his contract, alleging in the petition the contract, the breach of same by the defendant and that he, the plaintiff, had been at all times ready, willing and able to perform his part thereof; that there was located upon the land as much as two million feet of lumber of the kinds and grades set out in the contract that could have been sawed and delivered to him during the life of the contract; and that "this plaintiff bought all of said timber of defendant to be manufactured into lumber or lumber and logs as aforesaid, for the purpose of making immediate sale thereof to his customers and to others with whom he then had contracts in contemplation for the sale of said lumber and logs, all of which this plaintiff made known to defendant at the time of entering into said contract with him as aforesaid; that said lumber or lumber and logs were worth in the market the very highest and best market prices and this plaintiff could and did have the same sold at certain agreed and market prices which would have made and brought to him a profit of as much as $20,000.00."

The defendant by answer admitted the execution of the contract but traversed the other material allegations of the petition. In a separate paragraph he alleged by way of counterclaim against plaintiff that, "he did not furnish any orders whatever for lumber; that the man furnished by him to grade the same did grade about thirty thousand feet and accepted it as coming within

the requirements of said contract, but that plaintiff failed and refused and still fails and refuses to receive said lumber or pay this defendant anything whatever therefor, to this defendant's damage in the sum of $3,000.00.''

He also pleaded the alleged prior breach by plaintiff as a release of him from any obligations whatever thereunder.

The affirmative allegations of the answer were traversed by reply. Upon the trial at the conclusion of the evidence for plaintiff, a motion by defendant for a directed verdict in his behalf was sustained by the court; the jury returned a verdict in accordance therewith and from the judgment which followed dismissing his petition, the plaintiff appeals.

1. The chief ground upon which counsel for defendant attempt to sustain the directed verdict was the failure of plaintiff to introduce any evidence with reference to the following provision in the contract:

''In case the said Wood prefers selling his big logs in the log, instead of the lumber, the said Hunter agrees to pay him the following prices for same delivered on the bank of Green river, same being a part of contract for timber in above described boundary.''

It is insisted that since the defendant had the option to furnish logs instead of lumber proof of his failure to furnish the latter simply was insufficient to show a breach of the contract by defendant. This contention however is wholly without merit since the defendant by his answer defended upon the ground that he had been released from his obligations under the contract by a prior breach of the plaintiff and did not assert that he had offered to deliver logs instead of lumber under his option so to do as in our judgment under the circumstances he must have done before he could rely upon this provision of the contract as a defense for his proven failure to furnish the lumber according to the specifications furnished by the plaintiff as in the contract provided. The contract is essentially one for the delivery of lumber at specified prices to be sawed from maple, elm, hard and soft maple, gum, beech and red and white oak timber, whereas the option given to the defendant to supply logs instead of lumber refers only to red and white oak timber and only the big logs of such timber, as is evident from the fact that prices are named for

only such logs immediately following the optional provision quoted above.

Defendant did not therefore have an absolute option to furnish the lumber or logs, but only a qualified option to furnish logs instead of lumber from a part of the timber covered by the contract.

In order to avail himself of this privilege, it was his duty to have tendered the logs and after he did this he could have pleaded same as *pro tanto* defense; and he could have offered proof thereof under his general denial of damages to prove the true extent of same, but it was not incumbent upon plaintiff in order to make out his case to offer any proof upon this subject whatever.

2. It is also contended that the peremptory instruction was proper because of plaintiff's failure to prove what it would have cost him to load the lumber from the banks of Green river where defendant was to deliver it on boats in the river where plaintiff was to deliver it under contracts by which he had resold same at a very much larger price than he had agreed to pay defendant. It is contended that because of the absence of this proof there was no proof of facts from which plaintiff's profits could have been calculated.

Plaintiff introduced his contract with the defendant to show what the lumber would have cost him and he then introduced a contract under which he had resold same at higher prices and testified without objection that his profits upon the resale would have been $10.00 a thousand feet on an average for all of the lumber defendant had contracted to deliver him. He also proved that Vaughn and McIntyre with their mill and under their sawing contract with defendant could easily have sawed all of the timber on the one hundred acres of land within the contract period and that this would have amounted to about two million feet of lumber. It is therefore clear that by plaintiff's evidence he showed a loss of profits amounting to about $20,000.00 which resulted from defendant's proven failure to comply with the contract sued on.

While it is true that by comparison of plaintiff's contract with defendant with the one under which he made the resale, it would be difficult if not impossible to ascertain his profits without proof of the cost to plaintiff of loading the lumber from the banks of Green river onto boats therein, it is quite an easy matter to calculate those profits from his uncontradicted testimony that his

profits on the resale would have amounted to $10.00 a thousand feet on two million feet of lumber. If this proof of profits amounting to $10.00 a thousand feet was erroneous because of the failure to deduct therefrom the costs plaintiff would have been forced to incur in loading the lumber on boats in the river this could and should have been shown by the defendant. A failure upon the part of plaintiff to demonstrate the truth of his testimony as to the amount of his profits obviously can not destroy that testimony.

3. It is further insisted that the profits plaintiff would have made upon the resale are not the criterion of damages he could recover upon a breach of the contract by the defendant and that as no other measure of damages was proven the peremptory instruction was proper.

As a matter of fact, plaintiff did prove the market value of the timber and that it was in excess of the prices he had agreed to pay the defendant for same since he proved the prices at which he had resold the timber and that the prices thus obtained by him were about $5.00 a thousand feet under the market prices at the time. But even if this were not true, plaintiff made the necessary allegations in his petition and sustained them by proof to enable him to recover lost profits in this case. We have quoted above the allegations of the petition that he purchased the lumber of defendant in contemplation of his contracts of resale and that he informed defendant of this fact at the time he entered into the contract with him. Plaintiff's evidence fully sustained these allegations of the petition.

While ordinarily lost profits are not an element of damages recoverable for the breach of a contract of sale, it is thoroughly established that they are recoverable as special damages under the circumstances alleged and proven by plaintiff in this case that they were within the contemplation of the parties making the contract. See Pulaski Stave Co., etc. v. Miller's Creek Lumber Co., etc., 138 Ky. 372, 128 S. W. 96, and Pugh v. Jackson, Jr., 154 Ky. 649, 157 S. W. 1082; Asher, et al. v. Howard, et al. 178 Ky. 398, 198 S. W. 1149.

4. It is finally contended that there was no proof of loss of anticipated profits because plaintiff's contract of resale of the lumber to Maley and Wertz of Evansville, Indiana, which was in the shape of a letter to plaintiff, contained the stipulation that "your failure to have

shipment ready and guarantee continuance after sixty days from date, will forfeit this contract, otherwise to remain in full force for a term of twelve months or during the manufacture of said Wood tract.''

And also because it was stated at the close of the letter ''We await your confirmation of this contract.'' It is insisted that this latter statement shows that the letter was merely an offer and not a contract. But counsel have overlooked the fact that both the plaintiff and Mr. Bauman, general manager of Maley and Wertz with whom the contract was made, testified that plaintiff accepted and confirmed the contract within a few days after the letter was received by him. And it is insisted that the stipulation in the contract that ''your failure to have shipment ready and guarantee continuance after sixty days from date will forfeit this contract,'' forced the plaintiff upon penalty of forfeiture to deliver all of the lumber he was to get from defendant within sixty days after the date of the Maley and Wertz contract, and that since defendant had a whole year within which to complete his contract with plaintiff, it would have been impossible for the latter to make the delivery. This however is not true. Plaintiff did not have to make complete delivery to Maley and Wertz within sixty days but was only required to have a shipment ready and guarantee continuance within sixty days from the date of his contract with Maley and Wertz or by September 9, 1917. This he could easily have done had defendant complied with his contract.

For reasons indicated the judgment is reversed and the cause remanded for a new trial consistent herewith.